UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **PATRICK HANNAN, DAWN LEMIEUX, NICOLE GROOMES, AND PEGGY HORN** on behalf of themselves and others similarly situated, | : : : : : | CIVIL ACTION NO. |
| Plaintiffs, | : : | 3:15-CV-0395 (VLB) |
| v. | : : | |
| **THE HARTFORD FINANCIAL SERVICES, Inc., FAMILY DOLLAR STORES, INC., FAMILY DOLLAR STORES INC. GROUP INSURANCE PLAN & PLAN ADMINISTRATORS,** | : : : : : : : | |
| Defendants. | : | March 29, 2016 |

**MEMORANDUM OF DECISION GRANTING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S AMENDED COMPLAINT [Dkt. 55, 57]**

I. Introduction

Plaintiffs, who are participants in the Family Dollar Stores Inc. Group Insurance Plan ("the Plan"), bring this purported class action against Defendants Family Dollar Stores, Inc. ("Family Dollar"), the Plan and Plan Administrators (collectively, the "Family Dollar Defendants") and the Hartford Financial Services, Inc. ("The Hartford"), alleging four violations of ERISA, 29 U.S.C. § 1104-1106, for (1) breach of fiduciary duty as to both Defendants (Counts I and II), (2) co-fiduciary liability as to both Defendants (Count III), (3) knowing participation in a breach of fiduciary duty against The Hartford only (Count IV), (4) prohibited transactions against both Defendants (Count V), and (5) "federal common law

unjust enrichment under ERISA" against the Family Dollar Defendants only (Count VI).

Factual Background

The following facts and allegations are taken from the Complaint.

Defendant Family Dollar Stores, Inc. operates a chain of discount stores in various locations, and employs people throughout the United States. [Compl. ¶ 13]. Defendant Family Dollar contracted with Defendant Hartford to provide group life insurance coverage to Family Dollar employees under the Family Dollar Stores, Inc. Group Insurance Plan (the "Plan"). [Id. ¶¶ 13, 16]. The Plan is an employee welfare benefit plan under ERISA that offers both basic insurance for all employees and supplemental life insurance for those employees that elect it. Compl. ¶¶ 14, 17-18. See 29 U.S.C. § 1002(1).

Family Dollar employees are automatically enrolled in the employer-paid basic group life insurance policy at no cost to the employee. [Id. ¶ 17]. Family Dollar also offers employees the opportunity to purchase employee-paid supplemental life insurance coverage. [Id. ¶ 18]. Plaintiffs allege that Hartford and Family Dollar acted improperly when they negotiated the premiums for both the basic and the supplemental life insurance coverage. [Id. ¶ 20]. Specifically, Plaintiffs allege that Family Dollar negotiated a discount on the basic life insurance premium paid by Family Dollar; and that the Hartford offset some of this discount by increasing the supplemental life insurance premium charged to the Family Dollar employees who purchased supplemental coverage. [Id. ¶¶ 4, 20, 21]. Plaintiffs describe this arrangement as an inappropriate "cross-

subsidization and kickback scheme" that results in "overcharging" the employees who purchase supplemental coverage" with premiums that were "higher than called for" by "underwriting and actuarial pricing projections."  [Id. ¶¶ ¶¶ 14, 17-19, 22].

Family Dollar's Open Enrollment Guide states that "[a]ll full-time Team Members are automatically enrolled in a basic life insurance plan at no cost to the Team Member."  [Id. ¶ 17].  The Complaint alleges that this statement was a misrepresentation because it implied that "Family Dollar pays the entire cost for the basic group life insurance," without disclosing "the inflated charges built into the supplemental life insurance policies in order to subsidize the basic life insurance."  [Compl. ¶¶4, 45(a)-(f), 59].  Plaintiffs do not allege, however, that they paid more for supplemental life insurance than Hartford actually charged the Plan for that coverage.  Plaintiffs also do not allege that either Family Dollar or Hartford ever advertised or marketed the supplemental premiums offered by the Plan as involving 'favorable' or below-market rates.  Perhaps most importantly, Plaintiffs do not allege that Defendants ever represented that Family Dollar paid the entire cost of the basic life insurance coverage *out of its own non-Plan revenues*.  The sole allegation in the Complaint is that Defendants represented that the basic life insurance coverage was "non-contributory" and offered "at no cost to the participant."  [Id. ¶ 17].

## II. Standard of Review
### a. Failure to State a Claim, Fed. R. Civ. P. 12(b)(6)

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. U.S.*, 678 F.3d 147 (2d Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint.  *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (quoting Iqbal, 556 U.S. at 679).  "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'"  *Id.* (quoting Iqbal, 556 U.S. at 679).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

## III. Discussion

A person is a fiduciary with respect to a given ERISA plan only "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

Defendant Hartford urges dismissal of Count II of the Complaint – alleging that Hartford breached its fiduciary duties under 29 U.S.C. § 1004 – by first arguing that it is not a fiduciary with respect to negotiation of the Plan premiums because "[i]t is well-established that a company that is proposing to provide services to a plan is not acting as a fiduciary when negotiating the terms of its contract and its proposed compensation." [Dkt. 58, Def.'s Mem. at 6, *citing F.H. Krear & Co .v. Nineteen Named Trs.*, 810 F.2d 1250, 1259 (2d Cir. 1987) ("[w]hen a person who has no relationship to an ERISA plan is negotiating a contract with that plan . . . and presumably is unable to exercise any control over the trustees' decision whether or not, and on what terms, to enter into an agreement with him . . . [he] is not an ERISA fiduciary with respect to the terms of the agreement for his compensation")].

**Plaintiffs respond only that the conduct alleged concerns plan administration, and not negotiation, because "the scheme as a whole is a prohibited transaction under ERISA," and that "the matters complained of occurred after plan formation,"[1] [Pl.'s Opp. Mem. at 5-6], an admission that immediately appears at odds with a central premise of the Complaint, that Hartford breached fiduciary duties "by *entering into* a cross-subsidization scheme." [Compl. ¶ 52] (emphasis added). Later, Plaintiffs more directly concede that "plaintiffs here are not challenging the right of Hartford and Family Dollar to negotiate premiums, but rather their concealing (sic) the scheme and making false representations." [Id. at 10-11]. But regardless of whether Plaintiffs have conceded the claim, Hartford is correct that with respect to an agreement to provide a service to an ERISA plan, where a term of the agreement is "bargained for at arm's length, adherence to that term is not a breach of fiduciary duty" and that no discretion is exercised "when an insurer merely adheres to a specific contract term." *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 29 (2d Cir. 2002).**

**And even if Hartford could be held liable for its role in *negotiating* the Plan and its basic and supplemental premium rate structure, the rate structure described in the Complaint is simply not a rate structure that is prohibited by**

---

[1] **Plaintiffs also argue that the supplemental life insurance premiums are "plan assets" as defined by 29 C.F.R. §2510.3-102. To the extent this is an attempt to argue, without citation to legal authority, that Hartford breached a fiduciary duty through improper handling of plan assets, such a claim must fail. *See United States v. Glick*, 142 F.3d 520, 528 (2d Cir. 1998) (holding that "the mere deduction of [a service provider's compensation] from [plan] assets does not, in itself, create a fiduciary relationship" as between the service provider and the plan).**

ERISA or a violation of either Defendant's fiduciary duties.  On the contrary, another court in this Circuit examined an identical basic/supplemental rate structure in an ERISA plan and found identical fiduciary duty claims to be entirely without merit.

In *Amantangelo v. Nat'l Grid USA Serv. Co.*, plaintiffs alleged that their employer's life insurance plan offered two options: Plan A, which included supplemental coverage, and Plan B, which offered a basic level of coverage.  No. 04-CV-246S, 2011 WL 3687563 at *1 (W.D.N.Y. Aug. 23, 2011).  The *Amantangelo* plaintiffs alleged that the employer charged premiums for Plan A supplemental coverage in excess of what the insurance company charged the employer and used the excess to offset the employer's obligation to pay the Plan B premiums.  *Id.*  The Plan B basic coverage was advertised as being provided "at no cost to you."  *Id.*

The *Amantangelo* court flatly rejected plaintiffs' fiduciary duty claims, holding that "Defendants did not use Plaintiffs' payments other than to pay liabilities under a single [ERISA] plan."  *Id.* at *7.  The court noted that ERISA's fiduciary duty provisions are simply "not implicated" where an employer "makes a decision regarding the form or structure of the Plan[,] such as who is entitled to receive Plan benefits and in what amounts or how such benefits are calculated."  *Id.* at *6, *citing Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999).  Plaintiffs in *Amantangelo* appealed to the Second Circuit, which issued a Summary Order affirming the District Court's decision.  *Argay v. Nat'l Grid USA Serv. Co.*, 503 F. App'x 40 (2d Cir. 2012).  The Second Circuit found that the

employer did not act as a fiduciary "in setting premiums for Plan A participants" and further found that "none of Plaintiffs' payments inured to the benefit of Defendants because they were used to offset Defendants' total liabilities under a single welfare plan."[2]  *Id.*

Plaintiffs in the instant case nonetheless urge that *Amantangelo* can be distinguished because there "the insurance carrier [which profited frim the sale of the policies from the scheme] was not a party to the lawsuit."  [Pl.'s Mem. at 13].  This is a distinction the materiality of which the Plaintiff fails to establish.  As noted above, in *Harris Trust & Sav. Bank v. John Hancock, s*upra., the court held that an insurance company which negotiated the sale of and then sold insurance to an ERISA plan owed no fiduciary duty to the plan beneficiaries and was not liable to them for adherence to the terms of an agreement entered into through an arms-length negotiations.  Plaintiffs do not challenge the nature of the negotiations nor does it specify any other legal duty it claims the Hartford owed the plan beneficiaries.

Plaintiffs also argue that here, unlike in *Amantangelo*, it cannot be said that "all Plaintiffs' contributions were used to offset *Defendants' total* insurance premium liabilities." [Pl.'s Mem. at 13] (emphasis added).  That line of reasoning would necessitate both the suspension of logic as well as pure speculation.  It would require this Court to assume, without any factual support, that Hartford is a philanthropic institution which provides group life insurance products to

---

[2] In regard to the misrepresentation and non-disclosure claims, the court concluded by stating "[w]e have considered Plaintiffs' remaining arguments and find them to be without merit."  503 F. App'x at 42.

employers *gratis*.  Insurance is a financial product which is structured, offered and sold by insurance companies for the primary purpose of making a profit.  Even a mutual insurance company, which has no stockholders and is owned instead by its policyholders, exists to make a profit.  In this case, as in *Amantangelo*, all of Plaintiffs' contributions to the Plan were used to offset the *employer*'s insurance premium liabilities under the Plan and simultaneously to generate a profit for the insurance company which supplied the life insurance policies. The fact that *Hartford* profits from the relationship and does not allocate all of Plaintiffs' premiums to offsetting its liabilities is neither unique nor improper.

Counts I and II also allege that both Defendants violated fiduciary duties by misrepresenting or omitting "information . . . that participants who purchased supplemental group life insurance coverage . . . were being charged excessive premiums higher than Defendant Hartford considered necessary, so as to provide a kickback to Family Dollar to lower the amount it paid for basic group life insurance for all participants." [Compl. ¶¶ 45(b), 52(c)].  In addition, Counts I and II also allege that both defendants "falsely" described the basic life insurance coverage as "non-contributory" and that the supplemental group life insurance was "surprisingly affordable" because it was "sponsored by Family Dollar at reduced group rates."  [Compl. ¶¶ 45(d)-(e), 52(e)-(f)].

The *Amantangelo* court considered an identical omission claim and held that the defendant employer "did not have a duty to disclose the proportion by which Plan A and Plan B contributions were paying for Defendants' premium

liabilities under Prudential's group insurance policy." 2011 WL 3687563 at *9. The court explained that [t]he affirmative duty to disclose under ERISA is limited to only a few circumstances" and noted that "[c]ourts in similar contexts have found that plan administrators are under no obligation to disclose cost-containment mechanisms or financial incentives for cost savings." *Id., citing Nechis v. Oxford Health Plans, Inc.*, 421F.3d 96, 102–03 (2d Cir. 2005) (plan administrators not required to disclose actuarial valuation reports); *Weiss v. CIGNA Healthcare, Inc.*, 972 F.Supp. 748, 755 (S.D.N.Y.1997) (plan administrators not required to disclose physician compensation agreements).

Plaintiffs here argue that their misrepresentation claims distinguish the instant case from *Amantangelo*, because in that case "there was an absence of a showing or claim of affirmative misrepresentations regarding the plan." [Pl.'s Opp. Mem. at 12]. Plaintiffs accuse the *Amantangelo* court of "myopically view[ing] the matter simply as one where the plan sponsor was not obliged to inform participants of potential plan changes, instead of one where two fiduciaries were obliged to communicate honestly and fairly about the operation of the plan." [Id.]. Plaintiffs cite *McConocha v. Blue Cross & Blue Shield of Ohio*, 898 F.Supp. 545 (N.D. Ohio 1995), in support of their misrepresentation claims against Hartford and Family Dollar.

In *McConocha*, the defendant health insurer represented that policyholders would be responsible for a 20% co-payment for their medical expenses. 898 F. Supp. at 547. However, the insurer determined the co-payments based on the total amount billed by the healthcare providers, rather than the discounted

amount that was actually paid to the providers by the insurer. *Id.* Thus, policyholders actually paid well over 20% of the discounted charges ultimately assessed by the providers. *Id.* Plaintiffs fail to mention that courts have actually split on the outcome in so-called "80/20 cases," with some courts rejecting claims similar to those alleged in *McConocha*. *See Alves v. Harvard Pilgrim Health Care, Inc.*, 294 F. Supp. 2d 198, 211 (D. Mass. 2002) (listing 80/20 cases and describing different outcomes and reasoning).

More importantly, *McConocha* is plainly inapposite. The issue in an 80/20 case is whether the insurer has misrepresented the *amounts* that a policyholder would be liable to pay under a given plan for future medical expenses. Here, however, the sole allegation that Plaintiffs can raise is that Hartford and Family Dollar misrepresented how Plaintiffs' premiums would be allocated by the plan sponsor *after they were assessed*. In short, Plaintiffs impermissibly challenge "the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999).

Further, there simply are no misrepresentations alleged here.[3] *See Alves*, 294 F. Supp. 2d at 211 (copayment provisions not misleading if they "unambiguously specify how much a prospective member must pay for future medications"). There are no allegations in the Complaint which suggest that the statement that the supplemental plan would be "contributory" and the basic plan

---

[3] Plaintiffs would also have to allege facts showing that the misstatements were material to a plan participant's decision about whether to purchase insurance. *See Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d. Cir. 2001).

"non-contributory" was false or misleading.  Similarly, there are no allegations that Family Dollar's statement that supplemental premums were "surprisingly affordable" was false or misleading.

The employees in *McConocha,* were required to pay more absolute dollars than that which was represented to them because the method of calculating co-pays was not accurately disclosed.  By contrast, the Plaintiffs here were not required to pay an amount in excess of the amount disclosed.  Plaintiffs do not allege that the premiums they were charged were higher than those which were quoted.  Nor do they allege that they were only allowed to purchase the basic life insurance benefit unless they also purchased the supplemental life insurance benefit.  The basic life insurance policy was available – with automatic enrollment – to all Plaintiffs even if no employee chose to purchase the supplemental life insurance policy.  Unlike the plaintiffs in *McConocha* , Plaintiffs in the instant case received that which was disclosed at the price that was disclosed.

As such, Count I and Count II, alleging breach of fiduciary duties by both Defendants, must be dismissed.

Neither Defendant can be found to have violated a fiduciary duty, consequently, Count III and Count IV, which allege co-fiduciary liability and knowing participation as to each defendant for the same conduct previously alleged, must also be dismissed.  Similarly, Count V, which alleges that Hartford's sale of insurance constituted a prohibited transaction under 29 U.S.C. § 1106(a) & (b), must also be dismissed, as Plaintiffs have failed to plausibly allege that

Hartford breached any fiduciary duty owed to Plaintiffs by engaging in self-dealing with regard to plan assets.  See *Amantangelo*, 2011 WL 3687563 at *7 ("[b]ecause here all contributions were used for the purposes of paying Defendants' premium liabilities to Prudential, Defendants' have engaged in no unlawful transaction").

Finally, Plaintiffs conceded that Count VI must be dismissed by failing to raise any argument challenging Family Dollar's assertion that no independent federal common law cause of action for unjust enrichment exists where ERISA already provides the sole and exclusive remedy for the conduct alleged. *See Ludwig v. NYNEX Serv. Co., a wholly owned subsidiary of NYNEX Corp.*, 838 F. Supp. 769, 793 (S.D.N.Y. 1993) (following the reasoning of *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 142, 111 S.Ct. 478, 484, 112 L.Ed.2d 474 (1990) and its progeny).

IV. <u>Conclusion</u>

For the foregoing reasons, the Court GRANTS the Defendants' Motions to Dismiss the Complaint in its entirety. The Clerk is directed to close this *case*.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: March 29, 2016